IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| READ-A-THON FUNDRAISING CO., INC., | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:22-CV-0420-D |
| VS. | § § | |
| 99PLEDGES, LLC, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Read-A-Thon Fundraising Co., Inc. ("Read-A-Thon") sues defendant 99Pledges, LLC ("99Pledges") to recover on federal trademark infringement and related claims. 99Pledges moves under Fed. R. Civ. P. 12(b)(6) to dismiss the claims against it. For the reasons explained, the court grants the motion with respect to Read-A-Thon's federal trademark dilution claim, denies the motion as to all other claims, and grants Read-A-Thon leave to replead.

I

Read-A-Thon is a company that provides, *inter alia*, charitable fundraising services and non-downloadable software for tracking student progress in the field of reading ("Goods and Services").[1] It offers its Goods and Services in interstate commerce under its federally-

---

[1] In deciding 99Pledges' Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to Read-A-Thon, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Read-A-Thon's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is

registered READ-A-THON and READATHON trade names, trademarks, and service marks ("READ-A-THON Marks").  It maintains that it has continuously used its READ-A-THON Marks since at least as early as June 2013[2] and that they "ha[ve] gained valuable public recognition and fame in the United States in identifying Read-A-Thon as the exclusive source of the Read-A-Thon Goods and Services."  Compl. ¶ 13.

In this lawsuit, Read-A-Thon alleges that 99Pledges has marketed and sold charitable fundraising services that are substantially related to, and directly competitive with, Read-A-Thon's Goods and Services under the marks "READ-A-THON" and other substantially identical variations ("Allegedly Infringing Marks"), which is confusingly identical to the READ-A-THON Marks.  It sues 99Pledges for federal trademark infringement, federal trademark dilution, unfair competition under the Lanham Act, and common law unfair competition, and it seeks damages, injunctive relief, and attorney's fees.

99Pledges moves under Rule 12(b)(6) to dismiss Read-A-Thon's action against it. Read-A-Thon opposes the motion.  The court is deciding the motion on the briefs.

---

limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[2]Read-A-Thon has used its READ-A-THON Marks since December 1993 for its International Class 36 Goods and Services and since June 2013 for its International Class 9 Goods and Services.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive 99Pledges' motion to dismiss, Read-A-Thon must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, "the successful affirmative defense [must] appear[ ] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)). In other words, 99Pledges is not entitled to dismissal under Rule 12(b)(6) based on an affirmative defense unless Read-A-Thon "has pleaded [it]self out of court by admitting to all of the elements of the defense." *Id.* (quoting *Siverston*, 2011 WL 4100958, at *3).

### III

The court begins by considering 99Pledges' argument that its use of the word "read-a-thon" is protected by the Lanham Act's statutory fair-use defense.

### A

Under 15 U.S.C. § 1115(b)(4), the affirmative defense of fair use is available to a party whose "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." *Id.* Essentially, the fair-use defense prevents a trademark registrant from "appropriat[ing] a descriptive term for [its] exclusive use" and, by so doing, "prevent[ing] others from accurately describing a characteristic of their goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980).

To establish the statutory fair use defense, the defendant must demonstrate that it made use of the allegedly infringing mark "(1) other than as a mark, (2) in a descriptive

- 4 -

sense, and (3) in good faith." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000) (citations omitted); *see also Soweco*, Inc., 617 F.2d at 1185 (noting that the fair-use defense described in 15 U.S.C. § 1115(b)(4) "is available only when the allegedly infringing term is used not as a trademark but 'fairly and in good faith only to describe to users the goods and services of [a] party, or their geographic origin.'" (quoting 15 U.S.C. § 1115(b)(4))). The defendant does not have an "independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004).

B

99Pledges maintains that, when read in conjunction with Exhibit A,[3] the complaint alleges only that 99Pledges used the term "read-a-thon" to describe its reading-related charitable fundraising services; that the court may take judicial notice of "literally hundreds, if not thousands, of identical, indisputable public examples of current generic and descriptive uses of [the terms] 'readathon' and 'read-a-thon,'" D. Br. 2 (capitalization omitted); that countless third parties, including government agencies and organizations, also use the term fairly and descriptively and have done so for decades; that dictionary definitions and publicly-available documents show that anyone, including 99Pledges, can fairly use the term

---

[3]Exhibit A to the complaint is a screen shot of 99Pledges' website that has the words "Fundraising for schools and teams made easy! Read-a-thon" superimposed over a photo of children sitting in front of a bookshelf containing books. *See* Compl. at Ex. A.

"read-a-thon" to describe reading-related events in a generic manner; that 99Pledges' use of the term "read-a-thon" is a classic "fair use" of a descriptive term that cannot be accused of trademark infringement; that 99Pledges did not place a "TM" next to the term "read-a-thon," which further demonstrates descriptive use; and that, although fair use is an affirmative defense that is typically not decided at the Rule 12(b)(6) stage, "because Exhibit A attached to the Complaint in this case only alleges descriptive use in connection with 'charitable fundraising services,' the pleading is defective on its face," *id.* at 5-6.

Read-A-Thon responds that 99Pledges' fair use affirmative defense requires consideration of facts outside the complaint and cannot be addressed at the motion to dismiss stage; that its federally-registered marks are incontestable, and the court must therefore accept Read-A-Thon's well-pleaded allegation that its marks are neither generic nor merely descriptive with regard to its Goods and Services; and that the court should reject 99Pledges' request for judicial notice because a reasonable dispute exists as to whether the READ-A-THON Marks are generic or descriptive.

99Pledges replies that it is entitled to raise "the fair use issue" on a motion to dismiss when the complaint does not plead a non-descriptive use that is likely to cause consumer confusion or when it pleads a use that falls squarely within the classic fair use defense; that because Read-A-Thon "only alleges descriptive use in connection with generic 'charitable fundraising services,' the accused act is not a plausible commercial infringement that is likely

to cause consumer confusion,"[4] D. Reply 4 (emphasis omitted); and that its request for judicial notice is not for the purpose of establishing that Read-A-Thon's federal trademark registration is invalid on its face but, instead, "[t]he point is that anyone can use the words in the primary, descriptive sense as [they are] defined by publicly available sources without causing consumer confusion," and "the primary significance of this term in dictionaries is a noun," *id.* at 5 (emphasis omitted).

C

Because fair use is an affirmative defense, the court cannot dismiss Read-A-Thon's trademark infringement claim based on fair use unless all of the elements of the defense appear clearly on the face of the pleadings. *See Cochran*, 2011 WL 5604024, at *1 (quoting *Sivertson*, 2011 WL 4100958, at*2); *see also, e.g.*, *Jim S. Adler, P.C. v. Angel L. Reyes & Assocs. PC*, 2020 WL 5099596, at *9 (N.D. Tex. Aug. 7, 2020) (Horan, J.) ("Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss. But affirmative defenses may be adjudicated at the pleading stage where the facts necessary to establish the defense are evident on the face of the complaint."), *rec. adopted*, 2020 WL 5094678 (N.D. Tex. Aug. 29,

---

[4]To the extent that 99Pledges suggests in its reply brief that it is entitled to a dismissal of Read-A-Thon's trademark claim on the ground that 99Pledges' use of the term "read-a-thon" is unlikely cause consumer confusion, the court declines to consider the argument, which has been raised for the first time in a reply. *See, e.g.*, *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

2020) (Kinkeade, J.); *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F.Supp.3d 499, 505 (S.D.N.Y. 2015) (noting that some circuits have approved dismissal pursuant to the fair use defense at the motion to dismiss stage if the "facts necessary to establish the defense are evident on the face of the complaint." (citation omitted)). The complaint in this case does not establish on its face that 99Pledges uses the Allegedly Infringing Marks in a non-descriptive way or that it does so in good faith. In fact, it the complaint alleges the opposite.

Read-A-Thon affirmatively pleads that 99Pledges uses the Allegedly Infringing Marks as trademarks. It states that 99Pledges is using its Allegedly Infringing Marks "in connection with the offering for sale of services substantially related to and competitive with the Read-A-Thon Goods and Services," Compl. ¶ 21; that 99Pledges' marks "are confusingly identical to Read-A-Thon's established name in the relevant industry . . . and . . . confusingly evoke the very essence of Read-A-Thon's charitable fundraising services," *id.*; that 99Pledges "operates an active website . . . prominently featuring Defendant's Infringing Marks *for purposes of online advertising of its referenced services via the Internet*," *id.* (emphasis added); and that 99Pledges is "trad[ing] off the longstanding goodwill accrued by Read-A-Thon in its READ-A-THON Marks," *id.* ¶ 22. Read-A-Thon also alleges that 99Pledges acted in bad faith by "intentionally further continu[ing] to unlawfully infringe upon the READ-A-THON Marks by using the Infringing Marks" even after it received a cease and desist letter from Read-A-Thon on January 13, 2022. *Id.* at ¶ 26.[5]

---

[5]Even if the court were inclined to take judicial notice of various dictionary definitions and publicly-available documents demonstrating that *other* parties used the term "Read-A-

- 8 -

Considering the facts that Read-A-Thon has pleaded, the court is unable to conclude that 99Pledges' fair use defense is clearly evident on the face of the complaint. *See, e.g.*, *Jim S. Adler, P.C.*, 2020 WL 5099596, at *10 (denying motion to dismiss based on fair use defense where "[t]he facts necessary to establish the fair use doctrine are not evident on the face of the complaint, and, taking Plaintiffs' allegations as true, Plaintiffs have sufficiently pleaded plausible facts to show that they are entitled to relief."). Accordingly, the court denies 99Pledges' motion to dismiss Read-A-Thon's trademark infringement claim to the extent based on 99Pledges' fair use affirmative defense.[6]

IV

99Pledges next moves to dismiss all of Read-A-Thon's claims based on the affirmative defense of the statute of limitations.

A

99Pledges contends that, by alleging that Read-A-Thon has used its proprietary READ-A-THON Marks in commerce for nearly 20 years prior to 99Pledges' commencement of its use of the infringing marks, Read-A-Thon has "placed directly into the face of the complaint the allegation that the time frame of 99Pledges' conduct is an integral part of the factual background of its claims," D. Br. 6; that evidence attached to the motion to dismiss

---

Thon" in a descriptive manner, these facts would not necessarily negate Read-A-Thon's allegation that *99Pledges*' use of the term was non-descriptive and in bad faith.

[6]The court suggests no view on whether 99Pledges can or cannot prevail on a fair use affirmative defense at another stage of this case, such as on motion for summary judgment.

- 9 -

demonstrates that Read-A-Thon knew about 99Pledges' use of the READ-A-THON Marks before January 10, 2017; that Texas's four-year limitations period applies to Read-A-Thon's Lanham Act claims and two-year limitations period applies to its unfair competition claims; and that "based on Plaintiff's own e-mail dated January 10, 2017, it had actual knowledge of 99Pledges' accused conduct more than four (4) years ago and failed to bring suit under the Lanham Act or other statutes until February 28, 2022," and that, therefore, "all its implausible claims are time-barred in any event and should be dismissed," *id.* at 8 (emphasis omitted).

Read-A-Thon responds that 99Pledges has misunderstood or mischaracterized the law regarding limitations for trademark infringement and unfair competition claims and that "[i]n actuality, courts use the duration of the relevant state statute of limitations as a benchmark to create a presumption of excessive delay as part of a defense of laches, not as a time bar for claims," P. Br. 3 (underlining omitted); that the equitable defense of laches requires a balancing of the equities of the parties and the public and, accordingly, courts have consistently held that evaluation of a laches defense requires a full trial on the merits; and that even though 99Pledges may have a basis to set forth a laches defense, the case law and facts in the present case will ultimately show that such a defense will fail.

In its reply, 99Pledges argues, *inter alia*, that because Read-A-Thon did not respond to its argument and evidence that Read-A-Thon was aware of its public usage of the Allegedly Infringing Marks before January 10, 2017, this fact must be taken as true; that because Read-A-Thon's common law unfair competition claim is governed by a two-year

statute of limitations, and because Read-A-Thon delayed more than five years before filing suit, all of Read-A-Thon's claims demanding any form of relief under Texas state law are time-barred; that with respect to Read-A-Thon's Lanham Act claims, because the parties agree that 99Pledges now possesses a legal presumption that these claims are entirely time-barred, they should not proceed through discovery "to an inevitable result," D. Reply 8; and that courts in this circuit have held that an inexcusable delay can bar claims for past damages under the doctrines of laches *and* statutes of limitations.

B

Setting aside the question whether Read-A-Thon's Lanham Act claims are governed by a four-year statute of limitations or, instead, a presumption of excessive delay as part of an equitable laches defense, and assuming *arguendo* that Read-A-Thon's common law unfair competition claim is subject to a two-year limitations period under Texas law, the court denies 99Pledges' motion to dismiss these claims based on limitations because this affirmative defense does not appear clearly on the face of the pleadings.

Read-A-Thon alleges that "[u]pon learning that Defendant was using the Infringing Marks, Read-A-Thon made written demand upon Defendant on January 13, 2022 (per Exhibit B) that Defendant cease using the Infringing Marks[.]" Compl. ¶ 26 (underlining omitted). Exhibit B, which Read-A-Thon attaches to its complaint,[7] is a Cease and Desist Demand ("Demand Letter") dated January 13, 2022 and addressed to 99Pledges that states,

---

[7]As stated above, in considering a motion to dismiss the court may consider documents attached to the complaint. *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387.

*inter alia*, that "[Read-A-Thon] *recently* became aware that you are using the mark 'READ-A-THON' and substantially similar variants thereof . . . as a trademark and tradename on your commercial internet website." Compl. Ex. B at 5 (emphasis added).  Neither the complaint nor the Demand Letter states the date on which Read-A-Thon discovered the alleged trademark infringement.

In support of its limitations defense, 99Pledges relies entirely on evidence that it maintains "is contradictory to the allegations within the complaint itself." D. Br. 6 (emphasis omitted).  But it is well established that, when ruling on a Rule 12(b)(6) motion "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  The January 10, 2017 email on which 99Pledges relies is not attached to the complaint.  Nor is it referenced by the complaint or central to Read-A-Thon's claims.

Moreover, although a defendant's allegations in a motion to dismiss "may create a disputed factual issue as to [the plaintiff's] allegations, resolution of such a factual dispute is improper under a 12(b)(6) inquiry." *Miller v. Nationwide Life Ins. Co.*, 2008 WL 3086783, at *3 (5th Cir. 2008) (per curiam).  The court is required at this stage of the proceedings to construe the complaint in the light most favorable to Read-A-Thon, accept as true all well-pleaded factual allegations, and draw all reasonable inferences in Read-A-Thon's favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  The court cannot

conclude, based on the allegations in the complaint and the attached exhibits, that Read-A-Thon's claims are time-barred.

Accordingly, the court holds that 99Pledges is not entitled to dismissal of Read-A-Thon's action at the Rule 12(b)(6) stage based on the affirmative defense of limitations.[8]

V

99Pledges next moves to dismiss Read-A-Thon's claim for trademark dilution on the ground that Read-A-Thon has not sufficiently alleged that it owns a famous mark.

A

A dilution claim under federal law is only available to those who own "famous" marks. *See* 15 U.S.C. § 1125(c)(1). To determine whether a mark is famous under federal law, courts "consider all relevant factors, including the following":

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered . . . on the principal register.

15 U.S.C. § 1125(c)(2)(A).

"Federal law 'restrict[s] dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like.'" *Shippitsa Ltd. v. Slack*, 2019

---

[8] The court suggests no view on whether defendant can or cannot prevail on a limitations defense at another stage of this case, such as on motion for summary judgment.

WL 3304890, at *10 (N.D. Tex. July 23, 2019) (Fitzwater, J.) (alteration in original) (quoting *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, 2018 WL 1806500, at *4 (N.D. Tex. Apr. 17, 2018) (Boyle, J.)). "Other examples of famous marks include the JUST DO IT Nike slogan, the STARBUCKS mark, the MCDONALD'S mark, and the PEPSI mark." *Id.* (quoting *Springboards to Educ., Inc.*, 2018 WL 1806500, at *4). The federal dilution statute is "simply not intended to protect trademarks whose fame is at all in doubt." *Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F.Supp.2d 657, 679 (W.D. Tex. 2008) (citation omitted). Because the statute requires that the plaintiff's mark be "recognized by the general consuming public of the United States," 15 U.S.C. § 1125(c)(2)(A), "fame only in a limited geographic area or niche market will not support a federal dilution claim," *Springboards*, 2018 WL 1806500, at *4.

B

Read-A-Thon contends that it has sufficiently pleaded the fame of its READ-A-THON Marks by alleging that it has used its marks in commerce for nearly 20 years prior to 99Pldges' commencement of its use of the infringing marks; that it has used its marks in interstate commerce throughout the entire United States; that there has been "continuous and extensive marketing, advertising, and sales" of goods and services bearing the READ-A-THON Marks, P. Br. 13 (quoting Compl. ¶ 14); that the READ-A-THON Marks have been, and continue to be, recognized by consumers and associated with Read-A-Thon's goods and services, as well as excellence in the relevant industry; and that the READ-A-THON Marks are registered on the Principal Register.

The court disagrees that the allegations in the complaint are sufficient to plausibly plead that the READ-A-THON Marks are "a household name," *KST Elec.*, 550 F.Supp.2d at 679. Although the complaint alleges that Read-A-Thon has engaged in "years of advertising" that involved "great expense and effort," Compl. ¶ 14, it does not sufficiently plead the duration, extent, or geographical reach of advertising and publicity of the marks. Nor does it contain any specific allegations regarding the amount, volume, or geographical extent (other than the allegation that it sold its Goods and Services "in U.S. interstate commerce," *id.* ¶ 13) of its sales under the READ-A-THON Marks. Regarding the fame of its marks, Read-A-Thon alleges that

> [t]he Read-A-Thon Goods and Services offered by Read-A-Thon under its READ-A-THON Marks have been and continue to be recognized for excellence by consumers *in the relevant trade* in the United States. As a result of Read-A-Thon's promotional activities and unsolicited consumer recognition, the READ-A-THON Marks have become famous in the United States in connection with the Read-A-Thon Goods and Services. The *relevant public* therefore associates and identifies the READ-A-THON Marks with Read-A-Thon.

*Id.* ¶ 15 (emphasis added). These allegations at most establish that Read-A-Thon has established niche fame in the "relevant trade." But niche fame is not enough. *See Springboards*, 2018 WL 1806500, at *4-6. Read-A-Thon must instead allege that members of the general consuming public throughout the United States recognize its marks. *See id.* Read-A-Thon "has not done so—it has not plausibly pleaded that its mark[s] [are] on par, in any geographic area, with the likes of Starbucks, McDonald's, Rolex, or Apple." *Shippitsa Ltd.*, 2019 WL 3304890, at *11 (citation omitted). The court therefore dismisses Read-A-

Thon's federal trademark dilution claim.⁶

D

Read-A-Thon requests in its response that, if the court is inclined to dismiss the trademark dilution claim, it be granted leave to replead. Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will grant Read-A-Thon leave to amend its complaint. *See In re Am. Airlines, Inc. Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). Accordingly, the court grants Read-A-Thon 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

\* \* \*

For the reasons explained, 99Pledges' motion to dismiss is granted in part and denied in part, and Read-A-Thon is granted leave to replead.

**SO ORDERED**.

July 12, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

⁶Because the court is dismissing Read-A-Thon's federal trademark dilution claim on this ground, it need not address 99Pledges' argument that Read-A-Thon has failed to plausibly allege that 99Pledges caused dilution of the READ-A-THON Marks.